COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





EVERS BROWN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00340-CR



Appeal from


 384th District Court


of El Paso County, Texas


(TC # 20030D02536)





O P I N I O N



 Evers Brown appeals his conviction of possession of marihuana, greater than fifty pounds
but less than two thousand pounds. The trial court assessed punishment at four years' confinement
in the Institutional Division of Texas Department of Criminal Justice. Finding the evidence to be
both legally and factually sufficient, we affirm.

FACTUAL SUMMARY


 On May 15, 2003, Sergeant Hugo Silex, Detectives Ruben Cardenas, Barry Alvarez, Joe
Lucero, Frank Rios, and Border Patrol Agent Mike Riggins were working as part of the Alpha Unit.
The Alpha Unit is a narcotics interdiction unit where assigned officers focus on the trafficking of
illegal narcotics through the transportation system via buses, trains, freights, and the airport. On
May 15, the Alpha Unit was assigned to the Amtrak train terminal. All of the officers were in street
clothing.

 At approximately 3:30 p.m., Sergeant Silex was observing passengers board the westbound
train when he noticed Appellant walk by him. Appellant made eye contact for an unusually long
period of time. He carried a light blue shoulder duffle bag and a navy blue rolling suitcase with
leather handles which resembled a suitcase Sergeant Silex personally owned. Appellant was some
five feet away from Sergeant Silex.

 Ten to fifteen minutes later, the passengers finished boarding and the train departed. Usually,
the only persons remaining at the passenger loading area were the officers, but Sergeant Silex noticed
Appellant walking back toward him. This was unusual because persons who enter the passenger
loading area are either boarding a train or dropping someone off. Appellant was only carrying the
duffle bag and he no longer had the roll-away suitcase. (1) He also avoided making eye contact.

 Sergeant Silex asked Detectives Alvarez and Cardenas to walk the entire passenger loading
area to search for the missing suitcase. During this time, Detectives Rios and Lucero approached
Appellant, identified themselves as police officers, and asked Appellant where he was going, how
long he had been in El Paso, and with whom he had been staying. Appellant replied that he had been
in El Paso for two days, that he had been traveling for a week or two, and that he was headed for
Missouri. He had a train ticket to Missouri purchased with cash, but the name of the passenger was
Larry Harris.

 Appellant then told the detectives he lived in Atlanta, Georgia and had been staying with
some friends in northeast El Paso. When Detective Rios asked for details, Appellant could not recall
the names of his friends or the address. Appellant then consented to the search of his small blue
duffle bag which contained toiletries and clothing. Finding no narcotics, the officers let Appellant
go.

 Shortly thereafter, Detectives Alvarez and Cardenas found a dark blue suitcase approximately
200 yards from the passenger loading area. They contacted Border Patrol Agent Riggins. Agent
Riggins arrived with the drug dog and the dog alerted to the suitcase. The detectives took the
suitcase back to the train depot and Agent Riggins conducted a lineup using the suitcase and other
bags from the luggage room. The dog alerted a second time.

 Detectives Rios and Lucero then approached Appellant. Detective Lucero asked about the
suitcase and Appellant told him that the light blue bag was the only bag he had. Appellant was
eventually transported to the downtown police station while Detective Cardenas sought a search
warrant. The suitcase was found to contain twenty-five bundles of usable marihuana weighing 52.65
pounds. Detective Cardenas, who has worked as an undercover drug buyer, testified he would pay
$250 per pound. (2) The narcotics custodian for the El Paso Police Department testified his attempt
to obtain fingerprints from the marihuana was unsuccessful.

SUFFICIENCY OF THE EVIDENCE


 On appeal, Appellant challenges the sufficiency of the evidence to support the jury's verdict. 
In essence, he complains that the State failed to affirmatively link him to the drugs.

Standards of Review


 In conducting a legal sufficiency review, we review the evidence in the light most favorable
to the verdict to determine whether any rational fact finder could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex.Crim.App. 2005).
The trier of fact is the sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Thus, we may not re-evaluate the credibility of the
evidence and substitute our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562
(Tex.Crim.App. 2000); Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). 

 In reviewing the factual sufficiency of the evidence, we must view all the evidence in a
neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). When the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or the verdict is against the great weight
and preponderance of the evidence, the evidence is factually insufficient and a jury's verdict should
be set aside. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In addition, we must give
due deference to the fact finder's determinations. See id. at 8-9; Clewis v. State, 922 S.W.2d 126,
136 (Tex.Crim.App. 1996). The fact finder is the judge of the credibility of the witnesses and may
"believe all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991).

Possession of Marihuana


 A person commits the offense of possession of marihuana if he knowingly or intentionally
possesses a usuable quantity. See Tex.Health & Safety Code Ann. § 481.121 (Vernon 2003). 
The offense is a second-degree felony if the amount possessed is two thousand pounds or less but
more than fifty pounds. Id. at § 481.121(b)(5). Possession is defined as "actual care, custody,
control, or management." Tex.Health & Safety Code Ann. § 481.002(38)(Vernon Supp. 2006). 
In order to support a conviction for unlawful possession of a controlled substance, the State must
prove through either direct or circumstantial evidence that the accused (1) exercised actual care,
custody, control, and management over the contraband, and (2) the accused knew the substance he
possessed was contraband. See Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005);
Menchaca v. State, 901 S.W.2d 640, 651 (Tex.App.--El Paso 1995, writ ref'd).

 When the accused in not in exclusive possession of the place where the substance is found,
there must be additional independent facts and circumstances which affirmatively link the accused
to the contraband, in order to conclude that the accused had knowledge of and control over the
contraband. Poindexter, 153 S.W.3d at 406. The "affirmative links" rule is designed to protect the
innocent bystander from conviction based solely upon the fortuitous proximity to someone else's
drugs. Id. Therefore, by either direct or circumstantial evidence, the State "must establish, to the
requisite level of confidence, that the accused's connection with the drug was more than just
fortuitous." Levario v. State, 964, S.W.2d 290, 294 (Tex.App.--El Paso 1997, no pet.), citing Brown
v. State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

Factors To Consider


 The following is a list of non-exclusive "affirmative link" factors which have been found
sufficient to establish an accused was in possession of contraband: (1) the defendant's presence
when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's
proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence
of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when
arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was
an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11)
whether the defendant owned or had the right to possess the place where the drugs were found; (12)
whether the place where the drugs were found was enclosed; (13) whether the defendant was found
with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness
of guilt. Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex.Crim.App. 2006); see also Gregory v. State,
159 S.W.3d 254, 260 (Tex.App.--Beaumont 2005, pet. ref'd); Nguyen v. State, 54 S.W.3d 49, 53
(Tex.App.--Texarkana 2001, pet. ref'd); Hurtado v. State, 881 S.W.2d 738, 743 n.1 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd).

 It is the logical force of the circumstantial evidence and not the number of links that
establishes a defendant possessed the contraband. See Evans, 202 S.W.3d at 166; see also Taylor
v. State, 106 S.W.3d 827, 831 (Tex.App.--Dallas 2003, no pet.). There is no set formula to dictate
a finding of affirmative links that is sufficient to support an inference of knowing possession of
contraband. Taylor, 106 S.W.3d at 831. The presence of the accused at the location where the drugs
are found -- when combined with either direct or circumstantial evidence -- may be sufficient to
establish actual care, custody, or control of the drugs. See Evans, 202 S.W.3d at 162.

Legal Sufficiency


 Appellant contends the evidence was legally insufficient because: (1) he did not make
"furtive gestures," (2) there was no drug paraphernalia found on him or in plain view, (3) there was
no fingerprint evidence, (4) there was no residual odor of marihuana, (5) there were no incriminating
statements, (6) there was no attempt to escape, (7) there were no narcotics were found in plain view,
(8) he was not intoxicated or under the influence of drugs, (9) there were no drugs found on his
person, (10) there were no weapons found, and (11) he did not engage in suspicious "counter-surveillance."

 The evidence established that Sergeant Silex and Detective Lucero saw Appellant with a dark
blue rolling suitcase before the Amtrak train left the station. After the train departed, the officers
saw Appellant walking away from the passenger loading area without the suitcase. See De la Garza
v. State, 898 S.W.2d 376, 379 (Tex.App.--San Antonio 1995, no writ)(witness testimony that
defendant was seen in possession of bag prior to arrest was factor considered in affirmative link
analysis). The amount of marihuana found in the suitcase supports an inference that Appellant had
knowledge of its existence. The suitcase contained 52.65 pounds of marihuana worth $13,000. See
Robinson v. State, 174 S.W.3d 320, 328-29 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd)(courts
may consider the amount of contraband found in determining whether an affirmative link exists). 
Appellant's failure to make eye contact as he left the loading area was evidence of his consciousness
of guilt. He carried a ticket for an eastbound train to Missouri in someone else's name. Sergeant
Silex testified most of the drugs from the Juarez corridor head to the northeastern part of the country. 
He also testified narcotics traffickers often purchase tickets in false names because they do not want
the ticket to be traced back to them. See Bethancourt-Rosales v. State, 50 S.W.3d 650, 655
(Tex.App.--Waco 2001, pet. ref'd)(testimony of officers familiarity with the value of drugs and
common patterns of drug transportation are factors to consider in affirmative links analysis). Finally,
Appellant could not provide detailed information regarding his two-day stay in El Paso. Detective
Rios testified it is common for drug traffickers to have a cover story, but when pressed for details,
traffickers often tell stories that don't make sense, or they don't recall details about the story they're
telling, or they change the details. See Bethancourt-Rosales, 50 S.W.3d at 655(an implausible story
advanced by a defendant can provide circumstantial evidence indicating guilty knowledge). In
viewing the evidence in the light most favorable to the verdict, there was legally sufficient evidence
to affirmatively link Appellant to the suitcase. 

Factual Sufficiency


 Appellant contends the evidence is factually insufficient because: (1) there was no evidence
he was "high"on drugs, (2) there were no drugs or drug paraphernalia found on his person, (3) he did
not have a large sum of cash, (4) other people could have had access to the suitcase, and (5) he did
not admit that the marihuana was his.

 The jury was presented with numerous other factors to consider in affirmatively linking
Appellant with the suitcase. Although Appellant denied possession of the bag, both Sergeant Silex
and Detective Lucero saw Appellant with a blue rolling suitcase before the train departed. While
they did not see Appellant actually leave the suitcase 200 yards away, the suitcase was similar to the
bag they had previously seen in Appellant's possession.

 Where there is conflicting evidence, we must give due deference to the jury's determinations. 
See Johnson, 23 S.W.3d at 11; see also Cain, 958 S.W.2d at 407 (the weight and credibility of the
evidence and witnesses testimonies lies within the jury's discretion). In reviewing the evidence in
a neutral light, we conclude it was factually sufficient to affirmatively link Appellant to the suitcase. 
We overrule the sole issue for review and affirm the judgment of the trial court.


May 10, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Detective Jose Lucero presented similar testimony. After the Amtrak manager called for the westbound
passengers, he saw Appellant walk towards the passenger loading area carrying a light blue shoulder duffle bag and a
dark blue roll-away suitcase. Once all of the passengers boarded the train, only the detectives and Appellant remained. 
Appellant then walked towards Detective Lucero carrying only the light blue shoulder duffle bag. 
2. Based on Detective Cardenas' estimates, the marihuana was worth approximately $13,000 in El Paso County.